IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF MISSISSIPPI

SENSORY PATH INC.,
    Plaintiff,

v.                                                          CIVIL NO. 3:19-CV-219-GHD-RP

FIT AND FUN PLAYSCAPES LLC
PAMELA A. GUNTHER,
    Defendants.

## OPINION DENYING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

This matter arises from a Complaint by the Plaintiff in which it seeks a declaratory judgment of copyright non-infringement and asserts claims against the Defendants for common law trademark infringement; unfair competition and false designation of origin under 15 U.S.C. § 1125(a); statutory unfair competition under Miss. Code Ann. §§ 75-25-1, et seq; and common law unfair competition [1]. Presently before the Court is the Defendants' Motion for Summary Judgment on Counts II-V of the Complaint [92], in which they argue that the Plaintiff's alleged trademark SENSORY PATH is a generic term that is incapable of functioning as a trademark and that consequently the Defendants' use of this supposedly generic term cannot be considered trademark infringement [*Id.*, at ¶ 2]. The Defendants also argue that the Plaintiff's claim of unfair competition fails because the Plaintiff allegedly admitted in depositional testimony that the Defendants did not misrepresent the Plaintiff's products [*Id.*, at ¶ 3]. The Plaintiff responded in opposition to the Defendants' Motion for Summary Judgment [98], and the Defendants replied to the Plaintiff's Response [108]. The Defendants' motion is now ready for review.

For the reasons presented herein, Defendants' Motion for Summary Judgment on Counts II-V of the Complaint [92] is DENIED.

1

I.  **Factual Background and Procedural History**

**A. Factual Background**

The Plaintiff, Sensory Path Inc., is a corporation organized and existing under the laws of the state of Mississippi, and has its principal place of business at 198 Woodlawn Drive, Oxford, MS 38655 [1, ¶ 1]. Ms. Holly Clay is the founder of Sensory Path Inc. [1, ¶ 7]. Ms. Clay has been a public school teacher for twenty-two years, and has particularized expertise with special education and the education of children with autism [1, ¶¶ 1-2]. In 2007, Ms. Clay began developing her "Sensory Path" product, which was designed "to reduce sensory stimulation by using the child's body movements in a coordination pattern developed to target key areas of the neurological system that the child experiences during the learning process" [1, ¶¶ 9-10]. On September 3, 2018, Ms. Clay posted on her Facebook page a video of a child using her Sensory Path product [1, ¶ 14]. In the parlance of the Internet, Ms. Clay's video went "viral," having been viewed over 42,000,000 times and shared nearly 1,000,000 times [*Id.*]. Another similar video from Ms. Clay received 5,600,000 views [1, ¶ 15]. On September 11, 2018, Ms. Clay purchased the domain thesensorypath.com, and began building a website through which she could market her first two products, the Original Sensory Path and the Blast Off Path [1, ¶ 16]. Through her Sensory Path Inc. business, Ms. Clay began selling her Sensory Path products throughout the United States and expanded her product line [1, ¶¶ 19-20]. The business sells individual elements of her Sensory Path products as well as the entire products [1, ¶ 20].

Defendant Fit and Fun Playscapes LLC (herein "Fit and Fun") is a limited liability company organized and existing under the laws of the state of New York, effective May 3, 2011, with an address of 316 Main Street, Nelsonville, NY 10516 [10-1, ¶ 3]. Defendant Pamela A. Gunther is the founder and president of Fit and Fun, and resides at 67 Pearl Street, Nelsonville,

NY 10516 [10-1, ¶¶ 2-3]. Fit and Fun "designs and sells reusable stencils, paint kits, indoor adhesive stickers and roll-out games" [10-1, ¶ 4].

The term "Sensory Path" appears on Fit and Fun's website and social media pages [10-1, ¶ 8]. Prior to this lawsuit and for some time after the Plaintiff filed its complaint, Mississippi residents could access Fit and Fun's website and social media pages [10-1, ¶ 10; 19-1, ¶ 17]. Through this website, prospective customers could view products, add them to their digital shopping carts on the website, enter their shipping and payment information, and conclude a purchase through the website [19-1, ¶ 17]. In an apparent effort to cater to its prospective and current customers, Fit and Fun also provided information on its website about grants through which clients could purchase Fit and Fun's products [19-1, ¶ 18 and Ex. 9]. One of these grants explicitly targeted entities in Tennessee, Arkansas, and Mississippi [*Id.*].

Fit and Fun sent mass email blasts to entities across the country, including to consumers in Mississippi [10-1, ¶ 12]. Fit and Fun possessed approximately 1,118 Mississippi email addresses between June 1, 2018, and September 26, 2019 [65-6, at 9]. Fit and Fun obtained these email addresses from purchased lists, contacts made from trade shows outside of Mississippi, and people who signed up on the Fit and Fun website [65-6, at 9-10]. On October 10, 2019, "Fit and Fun instituted measures to delete its email contacts for individuals or entities from Mississippi," and was therefore unable to provide a report showing the number of Mississippi contacts who "received (rather than blocked as spam filters or otherwise deleted without opening) mass emails" [65-6, at 10]. Fit and Fun also engaged in advertising through the search engine Google in which the ads used the term "sensory path"; this advertising was visible to Mississippi users as well [19-1, ¶ 19]. Fit and Fun has made four direct sales to customers in Mississippi for a total of $5,390.92

3

[10-1, ¶ 6], with an additional indirect sale to a Mississippi customer through an independent distributor [30, at 6].

On August 22, 2019, Fit and Fun, through its legal representatives, sent a cease-and-desist letter to Sensory Path Inc., in which it alleged that Sensory Path Inc. was violating unfair competition laws and infringing on Fit and Fun's copyrights and/or trade dress [1-4]. Fit and Fun sent a second cease-and-desist letter to Sensory Path Inc. on September 25, 2019 [1-5].

### B. Procedural History

In response to these letters, Sensory Path Inc. brought its Complaint seeking a declaratory judgment of copyright non-infringement, as well as alleging claims against Fit and Fun and Ms. Gunther for trademark infringement and unfair competition [1, ¶¶ 28-57]. The Defendants subsequently filed their Motion to Dismiss for Lack of Personal Jurisdiction and Improper Venue Or, Alternatively, to Transfer Venue [10]. The Plaintiff responded to this Motion [19], and the Defendants replied to this Response [28]. In an effort to resolve this issue, the Plaintiff filed a Motion for Limited Jurisdictional Discovery [21]. The Defendants responded to this Motion [29], and the Plaintiff replied to this Response [34]. Upon a Motion from the Defendants [35], the Court granted leave for the Defendants to file a short sur-reply [39], which the Defendants subsequently filed [40]. The Court then issued an Order granting the Plaintiff's Motion for Limited Discovery [41]. Following a period for discovery, the Court issued an Opinion [74] and Order [75] in which it granted in part and denied in part the Defendants' Motion to Dismiss, dismissing without prejudice the Plaintiff's claim for a declaratory judgment of copyright non-infringement and denying dismissal in all other respects [75, at ¶¶ 2-3]. Thus, the only remaining issues relate to trademark infringement and unfair competition claims.

The Defendants subsequently filed their Answer, Affirmative Defenses, Counterclaims, and Demand for Jury Trial [78], which was followed by their First Amended Answer, Affirmative Defenses, Counterclaims, and Demand for Jury Trial [82]. The Plaintiff then filed its Answer to the Defendants' First Amended Counterclaims [90].

Shortly thereafter, the Defendants filed the Motion for Summary Judgment *sub judice* [92]. The Plaintiff filed its Response in Opposition to the Defendants' Motion for Summary Judgment [98], and the Defendants have filed their Reply [108]. The matter is now ready for review.

## II. Legal Standard

### A. Summary Judgment

Summary judgment is warranted "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Weaver v. CCA Indus., Inc.*, 529 F.3d 335, 339 (5th Cir. 2008). This rule "mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a sufficient showing to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp.*, 477 U.S. at 322. The party moving for summary judgment bears the burden of identifying its basis for the motion, and must point to specific parts of the record that support its contention of an absence of a genuine dispute of material fact. *Id.* at 323.

After the moving party does so, the burden shifts to the non-moving party, which must "go beyond the pleadings and by … affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" *Id.* at 324; *Littlefield v. Forney Indep. Sch. Dist.*, 268 F.3d 275, 282 (5th Cir. 2001); *Willis v. Roche*

5

*Biomedical Labs., Inc.*, 61 F.3d 313, 315 (5th Cir. 1995). When there is a dispute about the facts, the Court must view the facts in the light most favorable to the non-moving party and likewise must draw reasonable inferences in that party's favor. *Scott v. Harris*, 550 U.S. 372, 378 (2007). "However, a nonmovant may not overcome the summary judgment standard with conclusional allegations, unsupported assertions, or presentation of only a scintilla of evidence." *McClure v. Boles*, 490 F.App'x 666, 667 (5th Cir. 2012) (per curiam) (citing *Hathaway v. Bazany*, 507 F.3d 312, 319 (5th Cir. 2007)).

Any claim that is not raised in a response to a defendant's motion for summary judgment is deemed to be waived. *Aldrup v. Caldera*, 274 F.3d 282, 288 (5th Cir. 2001). Moreover, "[w]hen evidence exists in the summary judgment record but the nonmovant fails even to refer to it in the response to the motion for summary judgment, that evidence is not properly before the district court." *Malacara v. Garber*, 353 F.3d 393, 405 (5th Cir. 2003) (citing *Ragas v. Tennessee Gas Pipeline Co.*, 136 F.3d 455, 458 (5th Cir. 1998). "Rule 56 does not impose upon the district court a duty to sift through the record in search of evidence to support a party's opposition to summary judgment." *Ragas*, 136 F.3d at 458. That said, summary judgment "must be used cautiously or it may lead to drastic and lethal results." *Murrell v. Bennett*, 615 F.2d 306, 309 (5th Cir. 1980).

### B. Trademark Validity and Genericness

"Trademark infringement claims are governed by the Lanham Act." *Nola Spice Designs, L.L.C. v. Haydel Enterprises, Inc.*, 783 F.3d 527, 536 (5th Cir. 2015). The term "trademark," as defined by this Act, "includes any word, name, symbol, or device, or any combination thereof" that is (1) either used in commerce or which a person has a bone fide intention to use in commerce and said person applies to register his or her trademark with the government and (2) is used by the person "to identify and distinguish his or her goods, including a unique product, from

6

those manufactured or sold by others and to indicate the source of the goods, even if that source is unknown." 15 U.S.C § 1127. To prevail on a trademark infringement claim, a plaintiff must demonstrate that they possess a valid trademark and that the alleged infringer's use of the plaintiff's trademark creates a likelihood of confusion as to source, affiliation, or sponsorship. *Nola Spice Designs*, 783 F.3d at 536 (citing *Nat'l Bus. Forms & Printing, Inc. v. Ford Motor Co.*, 671 F.3d 526, 532 (5th Cir. 2012) and 15 U.S.C. § 1114(1)).

The Fifth Circuit relies on the spectrum of trademark protectability set forth in the Second Circuit case *Abercrombie & Fitch Co. v. Hunting World, Inc.*, which "divided marks into five categories: (1) generic, (2) descriptive, (3) suggestive, (4) arbitrary, and (5) fanciful." *Nola Spice Designs*, 783 F.3d at 537 (citing *Abercrombie & Fitch Co. v Hunting World, Inc.*, 537 F.2d 4, 9 (2nd Cir. 1976)). This spectrum "arrayed [these classes] in an ascending order which roughly reflects their eligibility to trademark status and the degree of protection accorded." *Abercrombie & Fitch Co. v. Hunting World, Inc.*, 537 F.2d 4, 9 (2nd Cir. 1976). "To be legally protectable, a mark must be 'distinctive' in one of two ways." *Nola Spice Designs*, 733 F.3d at 537 (quoting *Am. Rice, Inc. v. Producers Rice Mill, Inc.*, 518 F.3d 321, 329 (5th Cir. 2008). This can be view in terms of two separate categories: inherent distinctiveness and acquired distinctiveness. "[A] mark is inherently distinctive if '[its] intrinsic nature serves to identify a particular source.'" *Wal-Mart Stores, Inc. v. Samara Bros., Inc.* 529 U.S. 205, 210 (quoting *Two Pesos, Inc. v. Taco Cabana, Inc.*, 505 U.S. 763, 768 (1992)). "Suggestive" trademarks, like the brand name "Tide" for laundry detergent, are inherently distinctive; the same is true for so-called "arbitrary" and "fanciful" trademarks—such as "Camel" cigarettes and "Kodak" cameras, respectively. *Id.* at 210-11. In contrast, a trademark has acquired distinctiveness "if it has developed secondary meaning, which occurs when, 'in the minds of the public, the primary

7

significance of a [mark] is to identify the source of the product rather than the product itself.'" *Id.* at 211 (quoting *Inwood Laboratories, Inc. v. Ives Laboratories, Inc.*, 456 U.S. 844, 851, n. 11 (1982)). This category of trademark is frequently referred to as "descriptive": descriptive words that have developed secondary meaning—and thus acquired distinctiveness—are legally protectable as trademarks, while words that have not developed secondary meaning are "merely descriptive" and thus not legally protectable. *Id.* at 212-13. As the Fifth Circuit Court of Appeals summarizes in *Nola Spice Designs*, "suggestive, arbitrary, and fanciful marks are inherently distinctive, generic marks cannot be distinctive, and descriptive marks are distinctive only if they have acquired 'secondary meaning.'" *Nola Spice Designs*, 783 F.3d at 537. Thus, generic terms, like merely descriptive words, cannot be legally protected as trademarks. *Xtreme Lashes, LLC v. Xtended Beauty, Inc.*, 576 F.3d 221 227 (5th Cir. 2009).

"A generic term is the name of a particular genus or class of which an individual article or service is but a member." *Amazing Spaces, Inc. v. Metro Mini Storage*, 608 F.3d 225, 241 (5th Cir. 2010); *see also Abercrombie & Fitch Co. v Hunting World, Inc.*, 537 F.2d 4, 9 (2nd Cir. 1976) (noting that a "generic term is one that refers, or has come to be understood as referring, to the genus of which the particular product is a species"). "In principle, the touchstone is clear: '[T]he test for genericness [sic] is whether the public perceives the term primarily as the designation of the article.'" *Soc'y of Fin. Exam'rs v. Nat'l Ass'n of Certified Fraud Exam'rs Inc.*, 41 F.3d 223, 227 (5th Cir.1995) (quoting *Blinded Veterans Ass'n v. Blinded American Veterans Foundation*, 872 F.2d 1035, 1041 (D.C. Cir. 1989)). "Put another way, 'the primary significance of' a trademark 'in the minds of the consuming public is not the product but the producer.'" *Id.* (quoting *Kellogg Co. v. National Biscuit Co.*, 305 U.S. 111, 118 (1938). As with any trademark, the issue vis-à-vis genericness is "invoke[ing] the source" of the product. *Id.* However, if a

8

trademark describes a characteristic of the product, rather than describing the product itself, then the trademark is not generic but rather descriptive. *Nola Spice Designs*, 783 F.3d. at 538-39.

> A mark answers the buyer's questions "Who are you? Where do you come from?" "Who vouches for you?" But the name of the product answers the question "What are you?" Many competitive products will give the same answer, regardless of source or origin—e.g., a computer, a box of cigars, a bar of soap. Such generic designations tell the buyer what the product is, not where it came from.

*Soc'y of Fin. Exam'rs*, 41 F.3d at 227 (quoting 1 J. Thomas McCarthy, Trademarks and Unfair Competition § 12.01[2] at 12-4 (3d ed. 1992)).

Thus, to escape an allegation of genericness and acquire validity as a trademark, a term must describe a characteristic of the product, rather than the product itself, and invoke the source of the product in the minds of consumers. *Id.* This latter requirement pertains to a term's acquisition of secondary meaning. As indicated above, a descriptive term only warrants trademark protection once it has acquired secondary meaning, which is determined by courts primary through empirical inquiries. *Amazing Spaces*, 608 F.3d at 248. These inquiries are informed by the following factors: "(1) length and manner of use of the mark or trade dress, (2) volume of sales, (3) amount and manner of advertising, (4) nature of use of the mark or trade dress in newspapers and magazines, (5) consumer-survey evidence, (6) direct consumer testimony, and (7) the defendant's intent in copying the trade dress [or mark]." *Id.* Since this analysis is fundamentally a question of fact, summary judgment is only permitted when the record "compels the conclusion that the movant is entitled to judgment as a matter of law." *Board of Supervisors for Louisiana State University Agricultural and Mechanical College, et al. v. Smack Apparel Co.*, et al., 550 F.3d 465, 474 (5th Cir. 2008).

### III. Analysis

#### A. Trademark Validity and Genericness

As the moving party, the Defendants have the burden of proof in showing that there is an absence of evidence in the record to support the validity of the Plaintiff's alleged trademark. If they do so, then the Plaintiff must point to specific evidence to support its contention of trademark validity. The Defendants make several arguments to support their Motion for Summary Judgment. First, they argue that the Plaintiff uses their alleged trademark SENSORY PATH "as a generic noun" in their pleadings, exhibits, briefs, and declarations [93, at 3-4]. However, this is itself conclusory and circular. One cannot argue that the term is generic by arguing that it was used generically. As the Plaintiff correctly notes, the Defendants do not point to a single case in which the use of a term as a noun automatically renders it generic. The Defendants run into a similar problem when arguing that the Plaintiff's advertising is similarly generic [*Id.*, at 5]. Likewise, the Defendants fail to present a case in which the lack of the registered trademark symbol TM indicates that a term is generic; indeed, unregistered trademarks exist throughout society and common law.

The Defendants also point to a registration rejection from the United States Patent and Trademark Office ("USPTO") [*Id.*, at 6-7], but as the Plaintiff notes, this is not a final rejection and there has been a back-and-forth sequence of decisions at the USPTO regarding the validity of the Plaintiff's alleged trademark [99, at 21-22]. The Plaintiff points to a non-final decision from the USPTO finding that the term "sensory path" was descriptive, rather than generic, and a later decision finding that the term had acquired secondary meaning and was thus a valid trademark [*Id.*]. The Defendants have protested this finding [*Id.*], and it remains to be seen if the Plaintiff will ultimately be granted trademark registration. Nevertheless, these shifting decisions suggest

10

that there is in fact a genuine issue of material dispute regarding the validity of the Plaintiff's proposed trademark.

The Defendants next point to two instances in which the term "sensory path" was used in other contexts, one in 2014 and another in 2016 [93, at 7-8]. They also point to a third-party statement made on the Twitter social media platform, dated June 1, 2018, that used the term "sensory path" [*Id.*, at 8], and to the beginning of the term's use as a hashtag on Twitter and the social media platform Instagram. However, it does not cite to wide usage of this term on those platforms prior to the publication and dissemination of the Plaintiff's viral video using the "sensory path" term. Likewise, the Defendants point to the usage of the term "sensory path" by online vendors Teacherspayteachers.com and LemonAndGrayDesigns, sold through the digital commercial platform Etsy [*Id.*], but does not indicate whether this term was used prior to the Plaintiff's usage and alleged popularization of the term. Even were this not so, an alleged infringer cannot absolve themselves from liability by pointing to two other alleged infringers. The Defendants also point to the online commercial platform Amazon's use of the term "sensory path" as a "search term category" [*Id.*], but does not indicate how much usage this term provides or whether it represents a wide array of products beyond the Plaintiff's, or if said products were knockoffs of the original. Once again, it does not cite to case law in which commercial listings or "search term categories" that may or may not include the alleged trademark-holder's products indicate genericness. Likewise, the usage of the term as a noun to describe the Plaintiff's products does not indicate that it is generic, whether that term is used by the Plaintiff, a reporter, or a member of the public looking for donations to purchase "a sensory path" [*Id.*, at 8-10]. The Defendant fails to demonstrate how a donation page requesting funds to a "sensory path" is different from a page soliciting donations to purchase a "Chevy" to drive students to school. The same is true when

11

comparing the Plaintiff's statements, "It's helpful to understand what a sensory path is" and "[t]he sensory path is a place where students can take a breath and refocus" to a fictional statement by a car dealer stating that "a Corvette is a luxury machine." The Defendants likewise appear to insinuate that the lack of capitalization indicates genericness, but presents no case law to support this argument.

In its Memorandum in Support of Its Response in Opposition to the Defendants' Motion for Summary Judgment, the Plaintiff presents evidence in support of its argument that the term "sensory path" functions as a valid trademark. Firstly, it notes its use of the term as a trademark in commerce, and points to its own marketing and advertising using this term [99, at 3-4]. It also cites the notable popularity of a viral video of a child using the Plaintiff's product, which has been viewed over 42,000,000 times and shared nearly 1,000,000 times [*Id.*, at 4]. Using Google and Twitter tools, the Plaintiff also points to a lack of meaningful uses for the term "sensory path" before the Plaintiff popularized the term [*Id.*, at 5-6]. The Plaintiff also notes that the term "sensory path" does not refer to the dictionary definition of either of these individual words, but rather relates to sensory integration therapy [*Id.*, at 15]. This form of therapy, as defined by the Plaintiff, "helps children with sensory processing issues, such as autism, by exposing them to sensory stimulation focused on tactile, vestibular, and proprioceptive senses in a structured, repetitive way" [*Id.*]. Indeed, one might think that, based on the ordinary usage of the words themselves, a "sensory path" would *increase* one's sensory stimulation, but the Plaintiff notes that its product is designed to *reduce* said stimulation [1, at ¶10]. This lack of clarity further suggests that the term is not generic, in that a consumer reading such a term might not know what product they are buying. The Plaintiff further argues that, given this explanation of the term "sensory path," it requires a "'multistage reasoning process' to identify the characteristic of the product which the

12

mark suggests" and is thus suggestive, rather than descriptive or generic [*Id.*, at 14-15 (quoting *Lahoti v. Vericheck, Inc.*, 636 F.3d 501, 506 (9th Cir. 2011)]. It further contends that the generic term for its product is "movement path," and the term "sensory path" is the Plaintiff's trademarked term for its specific product in the genre [*Id.*, at 22].

As noted above, summary judgment is only warranted when the evidence would compel such an outcome. The Court notes that the "primary significance" of a trademark is "to identify the source of the product rather than the product itself" in the "minds of the public." *Inwood Laboratories, Inc. v. Ives Laboratories, Inc.*, 456 U.S. 844, 851, n. 11 (1982). Likewise, the public's perception of an alleged trademark is a critical consideration when evaluating allegations of genericness. *Soc'y of Fin. Exam'rs*, 41 F.3d at 227 (5th Cir.1995). The Defendants fail to introduce compelling evidence of the public's perception of the term "sensory path" as a generic product classification, rather than a source identifier. Specifically, it fails to present public surveys or consumer testimony. Meanwhile, the Plaintiff cites its use in commerce of the term, commercial success, advertising, and notable proliferation of a video documenting the product under the alleged trademark as evidence in the record showing that there is a genuine issue of material fact as to the validity of said trademark.

A similar analysis occurs when considering the issue of secondary meaning—a requirement for trademark protection of description terms. *Amazing Spaces*, 608 F.3d at 248. Courts use the following factors to evaluate through empirical inquiries whether a descriptive term has acquired secondary meaning : "(1) length and manner of use of the mark or trade dress, (2) volume of sales, (3) amount and manner of advertising, (4) nature of use of the mark or trade dress in newspapers and magazines, (5) consumer-survey evidence, (6) direct consumer testimony, and (7) the defendant's intent in copying the trade dress [or mark]." *Id.* Here too, the lack of surveys

13

and testimony from consumers cuts against a finding in favor of summary judgment. Both parties point to the Plaintiff's advertising and media coverage of the product to support their cases, but this only serves to emphasize the fact that there is a genuine issue of material fact in this case.

The Court reiterates here that this analysis is fundamentally a question of fact, and that summary judgment is only appropriate when the record "compels the conclusion that the movant is entitled to judgment as a matter of law." *Smack Apparel Co.*, 550 F.3d at 474 (5th Cir. 2008). The Defendants fail to clear this high bar. They cannot demonstrate that there is an absence in the record of evidence showing that the public perceives the term "sensory path" as a source identifier for the Plaintiff. The evidence they present is neither pervasive nor numerous enough to compel such a finding on its own. Rather, the record in this case supports the conclusion that the issue of genericness is indeed a genuine issue of material fact that would best be resolved at trial.

## B. Unfair Competition and Misrepresentation

The Defendants argue that summary judgment is warranted on the Plaintiff's claim of common law unfair competition because an alleged misrepresentation—a statement in a YouTube video in which the Defendants claim that the Plaintiff's products are difficult to remove—was allegedly admitted to by the Plaintiff's president Holly Clay under oath [93, at 11]. However, this dramatically oversimplifies the Plaintiff's common law unfair competition claim. As the Plaintiff notes, this claim relates to the Defendants' alleged actions, as a whole, to unfairly compete against the Plaintiff by passing off their products as those of the Plaintiffs [99, at 22-23]. More to the point, the Plaintiff does not assert that the YouTube video constitutes common law unfair

competition [*Id.*, at 23]. Thus, any defense by the Defendants predicated on this video must fail. Consequently, summary judgement is unwarranted as to this claim.

### IV. Conclusion

In light of the above analysis, the Court finds that the Defendants have failed to demonstrate that there is an absence of a genuine issue of material fact with regard to the validity of the Plaintiff's alleged trademark or its claim of common law unfair competition. Consequently, the Defendants' Motion for Summary Judgement [92] is DENIED.

An order in accordance with this opinion shall issue this day.

SO ORDERED, this the 12th day of October, 2021.

_____
SENIOR U.S. DISTRICT JUDGE